IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| **S BAR B RANCH, a Montana Corporation,** ) ) ) Plaintiff, ) ) v. ) ) **OMIMEX CANADA, LTD.,** ) **a Delaware Corporation,** ) ) Defendant. ) _____ ) | Cause No. CV-10-112-BLG-RFC ORDER |

**Introduction**

On March 20, 2013, the Court held a hearing on Plaintiff S Bar B Ranch Inc.'s (S Bar B) Motion to Certify Class (Doc. 35). At that hearing, the parties agreed that the Court ought to decide Defendant Omimex Canada, Ltd.'s (Omimex) Motion for Summary Judgment on Statute of Limitations and Laches (Doc. 38) before deciding the certification motion. The Court finds Omimex's argument availing on the statute of limitations issue and therefore need reach neither the issue of laches nor certification.

1

S Bar B admits that the entire case is governed by a narrow legal issue. Namely, whether the Montana Supreme Court case of *Montana Power Co. v. Kravik*, 179 Mont. 87, 586 P.2d 298, 303 (1978) adopts the "at the well rule" in allowing a lessee to deduct post-production costs prior to calculating royalty. S Bar B states that if the Court were to apply that approach "the class will lose." *See* Reply at 6. As discussed *infra*, that issue also becomes relevant in determining whether S Bar B's claims are barred by the statute of limitations.

## Factual Background

S Bar B is a gas royalty interest owner in Chinook, MT. S Bar B is a lessor in certain oil and gas lease agreements with Omimex. S Bar B alleges that Omimex cheated it (and other putative class members) out of millions of dollars in royalty payments because of certain unreported post-production withholdings which S Bar B argues present an artificial wellhead price to calculate the royalty payment.[1] These charges are for gathering, compressing and transporting the gas to market. Most of the gathering, compression and processing systems are co-owned by Omimex and a company called J.K. Petroleum.

---

[1] The wellhead price consists of Omimex entering into a gas sales agreement with the purchaser. The sales agreement states that it sells the gas to a marketing company at the wellhead. The negotiated wellhead price is based on the daily gas price index for the area less a small margin discount for the purchaser, less post-production charges. Royalty owners have no say in post-production charges.

2

S Bar B has identified at least 1,217 leases which comprise Omimex's Montana operations.  While the leases fall into four categories with different terms, none specifically authorize withholding of any deductions from the royalty payment.  Nothing in the royalty statement to lessors delineates the post-production deductions which are calculated in Omimex's sole discretion.   The royalty statement includes an "Other Deduction Amount" which was left blank.

In its motion for summary judgment, Omimex argues that S Bar B's claims are barred by the statute of limitations and laches because it was aware of its claims by virtue of another class action lawsuit (Devon Litigation) in which S Bar B was a class member.

Jack Davies, president of of S Bar B, was the director of the Montana Land and Mineral Owners Association (MLMOA) from 1997-2002.  During that time, he became concerned about undisclosed deductions from royalty check statements, including post-production deductions being improperly taken from royalty checks.  In 2001, he lobbied the Montana legislature to encourage legislation requiring full disclosure of deductions.  Eventually, the MLMOA entered into a lawsuit against Devon Energy which both parties agree is "remarkably similar" to the present litigation.  S Bar B was a class member in the Devon Litigation.

Interestingly, the attorneys in the Devon litigation are the same in the present case. In the Devon litigation, the MLMOA moved for class certification which was opposed by Devon. Before the Reply brief was filed, MLMOA filed a notice that the parties had tentatively settled. See *MLMOA v. Devon Energy Inc.*, 05-30-RKS (Doc. No. 100). Devon opposed class certification on all grounds during the "litigation phase" of the case but, before the court ruled, stipulated to the adequacy of the plaintiffs to represent the class for purposes of settlement. *See* Doc. 110, p4, FN 1.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a

material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

## Statute of Limitations

Mont Code Ann. § 27–2–203 provides that:

The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

"As a general rule, the statute of limitations for actions based on fraud begins to run when the fraud occurs, unless the facts forming the basis for the alleged fraud are, by their nature, concealed, or the defendant takes affirmative action to prevent the plaintiff from discovering the injury." *Osterman v. Sears, Roebuck & Co.* 318 Mont. 342, 350 (Mont. 2003) citing *Cartwright v. Equitable Life Assurance Soc'y* (1996), 276 Mont. 1, 17, 914 P.2d 976, 986.  A party asserting fraud is put on "inquiry notice" when he could discover the other parties misdeed through ordinary diligence.  *Id.* (Citations omitted).  "Mere ignorance of the facts will not suffice to  toll the statute of limitations." *Id.* quoting  *Holman v. Hansen* (1989), 237 Mont. 198, 202, 773 P.2d 1200, 1203.

Omimex argues that S Bar B had knowledge sufficient to put it on inquiry notice of its claim as early as 1997.  To this end, Omimex points to S Bar B's lobbying activities with the MLMOA  and prior similar litigation in which S Bar B was a class member.   Omimex points out that under Mont Code Ann. § 82-2-101, S Bar B had a statutory right to an accounting during the limitations period and offers no explanation why it did not timely do so.

S Bar B counters that the discovery rule and fraudulent concealment should toll the statute of limitations.  In order to determine if Omimex's calculation of royalty payments was concealed or self-concealing, the Court is compelled  to address the overarching issue of whether Omimex had a duty to disclose certain post-production costs which is the crux of S bar B's claims.  In other words, if under Montana law, Omimex was entitled to deduct post-production costs prior to calculating the royalty there could be no concealment and the statute of limitations would not be tolled by the discovery rule.

## I.     At the Well  Rule v. Marketable Products Rule

In the briefing on class certification S Bar B states in no uncertain terms that a single legal issue controls the outcome of this case.  Namely, whether the Montana Supreme Court case of *Montana Power Co. v. Kravik*, 179 Mont. 87, 586 P.2d 298, 303 (1978) adopts the "at the well rule" in allowing a lessee to

deduct post-production costs prior to calculating royalty. S Bar B states that if the Court were to apply that rule "the class will lose." See Doc. 59 at 6. S Bar B advocates for application of the "first marketable product" approach under which the lessees are required to bear all costs to place natural gas in a marketable condition.

In *Kravik* the Montana Supreme Court stated that, "[w]here no market exists in the field, in the absence of unlawful combination or suppression of price, royalty may be computed upon receipts from the marketing outlet for the products, **less the costs and expenses of marketing and transportation."** *Montana Power Co. v. Kravik*, 179 Mont. 87, 586 P.2d 298, 303 (1978) (citations omitted) (Emphasis supplied).

Other courts have read *Kravik* to adopt the "at the well rule." In *Rummel v. Altamont Oil and Gas, Inc.*, Montana Ninth Judicial District, DV-07-64 (2010), Judge McKinnon (now Montana Supreme Court Justice McKinnon) addressed the calculation of royalty payments in a summary judgment order. The parties agreed that the amount of royalty depends on the market price. *Id.* at 4. Judge McKinnon found *Kravik* to be controlling authority and that the Montana Supreme Court adopted the "at the well rule" as opposed to the marketable product approach. *Id.*

at 6.  Judge McKinnon explains that the marketable product rule, which requires lessees to absorb post-production costs, is the minority approach.  *Id.*

In *Bice v. Petro-Hunt, L.L.C.*, 768 N.W.2d 496 (N.D. 2009), the North Dakota Supreme Court cited *Kravik* in finding that Montana had followed the majority of jurisdictions and adopted "at the well rule."  *Id.* at 501.[2]

In *Emery Resource Holdings, LLC v. Coastal Plains Energy, Inc.* Slip Copy, 2012 WL 1085718 (D.Utah,2012), a Federal District Court in Utah addressed the question of who should incur the costs of making otherwise unmarketable gas into a marketable product.  *Id.* at 7.  *Emery* cites *Kravik* as holding that the market price is understood to mean the current market price being paid for gas at the well where it is produced.  *Id.* at 8.  Magistrate Judge Warner explained the majority approach which provides that "any costs incurred by the lessee after the [gas] reaches the wellhead, whether to improve the quality of the [gas] or to

---

[2] In *Bice* the North Dakota Supreme Court explained, "[T]he 'at the well' rule, allowing a lessee to deduct post-production costs prior to calculating royalty, is the majority rule. [citations omitted] The three major oil and gas producing states, Louisiana, Mississippi and Texas follow the 'at the well' rule. *Babin v. First Energy Corp.*, 96 1232, p. 2 (La.App. 1 Cir. 3/27/97); 693 So.2d 813, 815; *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 122 (Tex.1996); *Piney Woods Country Life Sch. v. Shell Oil Co.*, 726 F.2d 225 (5th Cir.1984) (interpreting Mississippi law). Other states also following the 'at the well' rule include California, Kentucky, Montana and New Mexico. *Elliott Indus. Ltd. P'ship v. BP America Prod. Co.*, 407 F.3d 1091, 1109–10 (C.A.10, 2005); *Atlantic Richfield Co. v. State*, 214 Cal.App.3d 533, 262 Cal.Rptr. 683, 688 (1989); *Montana Power Co. v. Kravik,* 179 Mont. 87, 586 P.2d 298, 303 (1978); *Reed v. Hackworth*, 287 S.W.2d 912, 913 (Ky.1956)."  *Id.*

transport it to a market where it may be sold may be deducted before the royalty is calculated." *Id.* (quoting *Bice*, 768 N.W.2d at 501).

S Bar B does not directly cite *Kravik* or its progeny in its response to the summary judgment motion but in the certification briefing argues that these cases are simply wrong and that *Kravik* does not adopt the "at the well rule." Instead, S Bar B cites to treatises and argues that the marketable products rule is the better reasoned approach. S Bar B provides no compelling authority or argument suggesting Montana has not adopted the "at the well rule."

Additionally, the acts of the Montana Legislature undermines S Bar B's position that certain post-production costs were improperly withheld. As Omimex points out, in 2005 the Montana legislature enacted HB 43 which concerns charges assessed against the oil and gas royalty owner. *See* Mont. Code Ann. § 82-10-104. The original draft of HB 43 provided the following language:

> (2) In addition to the information required in subsection (1), a gas producer paying royalties to a royalty owner shall, at the time of payment, specify by line item every charge assessed against the royalty owner, describe how the assessment is calculated, and list the name of the beneficiary of the assessment. Line items may include but are not limited to charges and assessments for:

9

> (a) production and pumping;
>
> (b) gathering;
>
> (c) transporting;
>
> (d) treatment;
>
> (e) specific itemized service charges; and
>
> (f) any other assessments unique to the circumstance.

See Mont. HB 43, 59th Leg. Reg. Sess. 1-2 (Jan. 10, 2005). However, subsection (2) (a)-(f) was ultimately stricken.

The legislative intent behind striking the foregoing language further buttress Omimex's argument that, under Montana law, it was entitled to deduct certain post-production costs and complied with its statutory reporting obligations.

## Conclusion

Regardless of whether the marketable product rule is the better reasoned approach or gaining popularity, the Court can not ignore *Kravik* and its progeny. The Court finds that in view of the above cited authority the Montana Supreme Court has indeed adopted the majority "at the well rule" in calculating royalty payments. As S Bar B admits, this dooms their claims.[3] Omimex had no duty to

---

[3] In its Reply Brief in Support of Motion for Certification, S Bar B admits that resolution of " this single legal issue will resolve this entire lawsuit in one stoke." Doc. 59, p. 9.

set forth post-production deductions before calculating the royalty.  Consequently, the discovery rule is inapplicable and the Court finds that S Bar B's fraud claims are time barred by the applicable statute of limitations.  For obvious reasons S Bar B's contract claims are also destroyed by the "at the well rule" adopted by the Montana Supreme Court.  No genuine material issue of fact exist–Omimex is entitled to Judgment as a matter of law.

    Now therefore it is hereby Ordered:

    1.  Omimex's Motion for Summary Judgment (Doc. 38) is GRANTED.

    2.  S Bar B's Motion for Class Certification (Doc. 35) is DENIED as moot.

    3.  The Clerk of Court shall enter judgment in favor of Defendant.


    Dated this 29th Day of April, 2013.

    */s/ Richard F. Cebull*_____
    RICHARD F. CEBULL
    SENIOR U. S. DISTRICT JUDGE